UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


T-Mobile Northeast, LLC et al

    v.                           Civil No.  17-cv-339-LM
                                       Opinion No. 2018 DNH 234
Town of Bedford, NH et al


**O R D E R**

To fill a gap in cellular telephone coverage, plaintiffs, T-Mobile Northeast, LLC ("T-Mobile") and American Towers, LLC ("American Towers"), seek to construct a new wireless telecommunications tower in Bedford, New Hampshire.  They applied for a special exception from the Town of Bedford Zoning Board of Adjustment ("ZBA") to allow this construction, which the ZBA denied.  Plaintiffs filed suit against the ZBA and the Town of Bedford, NH ("Town"), alleging that the ZBA's denial of their special exception application effectively prohibited the provision of personal wireless services in the identified gap in violation of the Federal Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(i)(II).  Before the court are the parties' cross-motions for summary judgment.  For the following reasons, plaintiffs' motion is granted and defendants' motion is denied.

## STANDARD OF REVIEW

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id.; see also Ricci v. DeStefano, 557 U.S. 557, 586 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." (quotation omitted)).

"To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (quotation and brackets omitted). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013). "Where the parties file cross-motions for summary judgment, [the court] employ[s] the same standard of review, but view[s] each motion separately,

drawing all inferences in favor of the nonmoving party." [Fadili v. Deutsche Bank Nat. Tr. Co.,](772 F.3d 951, 953 (1st Cir. 2014).

## BACKGROUND

T-Mobile provides wireless communications services, including voice, data, and wireless broadband internet services, throughout New England pursuant to licenses issued to it by the Federal Communications Commission.  To ensure seamless provision of these services, T-Mobile uses a network of wireless telecommunication facility sites, commonly known as cell towers, spaced in a grid-like, or "honeycomb-like" pattern.  American Towers constructs, owns, and manages wireless telecommunication facilities used by T-Mobile and other wireless carriers to provide services.

This suit arises out of plaintiffs' desire to construct a 130-foot monopole wireless telecommunications facility at 25 Tirrell Road in Bedford.  Plaintiffs allege that this facility is necessary to fill a coverage gap of approximately 6.7 square miles in southern Bedford, near the areas of Back River Road, County Road, and a portion of Wallace Road.

After discovering the lack of adequate wireless services in the above-described gap area, T-Mobile determined that none of its existing facilities could be upgraded or modified to remedy

the gap in services.  It then surveyed the greater Bedford area for collocation opportunities on pre-existing cell towers, and for other existing structures that could be adapted for use. Finding no suitable existing structures, plaintiffs' radio frequency engineer identified a "search ring" within which a new facility would need to be constructed to remedy the gap in services.[1]

Plaintiffs' site analysts surveyed the properties within the search ring for viable construction sites.  The analysts conducted an initial screening process using an aerial or satellite survey of the search ring to identify potential exceptions to the land use pattern that would provide an opportunity for a wireless telecommunications facility site. See doc. no. 13-8 at 3.  In particular, the analysts searched for large areas of open land, preferably forested but not wet, that do not have extreme topography.  Id.  After locating possible sites, the analysts then conducted a four-step feasibility analysis for each potential site.  Doc. no. 13-6 at 10.  First, they determined which sites were radio frequency

_____

[1] Plaintiffs also considered alternatives to a "macro" site plan (i.e. a full-size tower), including a Distributed Antenna System, "small cell" technology, and signal boosters.  See doc. nos. 14-8 at 7-8, 14-16 at 12.  However, plaintiffs determined those options to be infeasible based, primarily, on those technologies' limited range in comparison to the scale of the gap in services.  See doc. nos. 14-8 at 7-8, 14-21 at 16-18.

approved, meaning that a tower at that site could technically provide coverage in the gap.  Second, they determined whether any radio frequency viable sites were "leaseable;" in other words, whether the owner of the land was interested in leasing it.  Id.  Third, they considered the likelihood of "environmental approval" of the sites, including zoning and wetland concerns.  Id.  Finally, they evaluated the "constructability" of the sites, including access to the site, and availability of utilities.  Id.

Plaintiffs contend that, applying these criteria, they considered and ruled out eleven viable properties within the search ring: Utility Transmission Stanchions on Camp Allen Road; 25 Strawberry Hill Road; Camp Allen, 56 Camp Allen Road; Pennichuck Water Works, Sebbins Pond Drive; Girl Scouts of the Green and White Mountains, 26 Camp Allen Road; Global Premier Soccer League, Camp Allen Road; Manchester Boys and Girls Club, 36 Camp Allen Road; 22 Tirrell Road; 94 Back River Road; 80 Forest Drive; and 148 Back River Road.  Doc. no. 14-1 at 6-9. As will be discussed in more detail below, plaintiffs ruled out each of these properties for various reasons.  Plaintiffs contend that they ultimately settled on 25 Tirrell Road (the "subject property") because it was the only property in the search ring that met all of the feasibility criteria, including a willing landowner.

The subject property is located in Bedford's Residential-Agricultural district. The Town's Zoning Ordinance permits wireless telecommunication facilities in all zoning districts. However, under the Ordinance, an applicant seeking to construct a "[n]ew commercial ground mount wireless telecommunications facilit[y]," must obtain a special exception from the ZBA. Doc. no. 13-4 at 9. Even with a special exception, such facilities are limited to 130 feet in height. Id. The Ordinance further outlines the applicant's burden of proof in seeking a special exception:

> The applicant shall have the burden of proving that there are no existing structures that are suitable to locate its wireless telecommunications facility; that the proposed facility will fill an existing significant gap in the ability of remote users to access the national telephone network; that the manner in which the applicant proposes to fill the significant gap in service is the least intrusive manner with respect to visual impact, environmental impact and safety. This will require a showing that a good-faith effort has been made to identify and evaluate less intrusive alternatives, including that the provider has considered less sensitive sites, alternative system designs, alternative tower designs or placement of antennas on existing structures.

Id. at 10. The Ordinance requires an applicant to provide with its application, among other things, "[a] list of all contacts made with owners of potential sites regarding the availability of potential space for" a facility, and an aesthetic mitigation proposal. Id. at 10-11.

In December 2016, after executing an option to lease the subject property, plaintiffs applied for a special exception and a dimensional variance for tower height to construct a 150-foot monopole telecommunications facility on the subject property. Doc. no. 13-3 at 9, 15. Plaintiffs submitted numerous materials in support of their application, including a radio frequency analysis, maps demonstrating current coverage and projected coverage after construction, and an analysis of alternative sites. Id. at 43-61. Specifically, the alternative site analysis identified five potentially viable sites: Camp Allen Road Utility Stanchions, 80 Forest Drive, 25 Strawberry Hill Road, 97 Back River Road, and 25 Tirrell Road. Id. at 58. The alternative site analysis explained why the four other sites were not feasible, leaving 25 Tirrell Road.

The ZBA held hearings on plaintiffs' special exception application on January 17, March 21, and April 18, 2017. At the March 21 hearing, some ZBA members raised concerns about plaintiffs' efforts to identify and evaluate alternative sites. Specifically, a ZBA member pointed out that the address "97 Back River Road" did not exist in town records, and that 80 Forest Drive did not appear to be a large enough lot for construction of a wireless tower. See doc. no. 13-6 at 9. Plaintiffs' site acquisition consultant, Mike Almada, responded that there may have been a "mismatch" of the address for 97 Back River Road.

Id.  Almada further explained that he was not familiar with 80
Forest Drive and that the person who did the initial field
survey was "no longer with [plaintiffs]."  Id.  ZBA members also
pointed out that plaintiffs had mischaracterized the lot sizes
in the search ring as small, one-fourth to one-half acre lots,
when the average lot size is one acre.  Id. at 14-15.

Plaintiffs' counsel conceded that he was unable to provide
a "clear answer" to all of the ZBA's questions about alternative
sites.  Id. at 10.  ZBA Chairman John Morin stated that he was
"not comfortable with [plaintiffs'] alternative site
submission."  Id.  ZBA member Chris Swiniarski also commented
that the alternative site analysis was "the biggest hurdle in
this application," and that it would be helpful if plaintiffs
provided specific details of the feasibility analysis it applied
to each potential site.  Id. at 11.  Plaintiffs' counsel replied
that he heard the ZBA's concerns "loud and clear" and asked that
they table the application until the ZBA's next public hearing.
Id.

Prior to the ZBA's April 18 hearing, plaintiffs amended
their special exception application to request approval for a
130-foot tower, rather than a 150-foot tower, and, consequently
withdrew their request for a height variance.  Plaintiffs also
supplemented their alternative site analysis.  The supplemental

analysis concerned the same five potential sites addressed in the initial analysis, but provided greater detail as to why each of the four alternative sites had been rejected.

At the April 18 hearing, plaintiffs presented their supplemental alternative site analysis to the ZBA. As to 56 Camp Allen Road, plaintiffs explained that this property was originally considered based on the prospect of extending the existing utility stanchions. However, that scenario was rejected for a number of reasons: insufficient height of stanchions, construction difficulties, and inability to conduct maintenance on antennas once installed. Doc. nos. 13-7 at 36, 13-8 at 3. Plaintiffs further explained that they had discovered that the 56 Camp Allen parcel was larger than initially believed, so another location in that parcel was considered for construction of a new tower. However, they eliminated that site as a possibility because "in addition to the fact that [the owners] did not respond to inquiry, [the site] is well beyond the search ring, [and] it is close to an existing T-Mobile site." Doc. no. 13-8 at 3-4.

Plaintiffs also addressed the other alternative sites. They explained that 80 Forest Drive had been rejected due to zoning concerns, including setback requirements, and that 94

Back River Road[2] had been rejected due to its proximity to conservation land.  Plaintiffs represented that the owner of 25 Strawberry Hill Road did not respond to plaintiffs' written proposals to lease the property.  Additionally, plaintiffs admitted that their description of the typical lot size in the search ring as one-fourth to one-half acre was inaccurate.  However, they explained that the fact that the average lot size is, in fact, one acre did not affect their alternative site analysis.  Id. at 7.

Following plaintiffs' presentation and input by the public, the ZBA moved into deliberations on the application and reviewed each of the special exception criteria.  Several ZBA members raised concerns regarding the Camp Allen property, noting that the information presented was contradictory and confusing.  See id. at 26.  Specifically, ZBA members appeared confused about how the property could both be outside of the search ring and have been eliminated as a possibility because the property owner did not respond to inquiries.  Id.  ZBA members observed that they were not "satisfied that that alternative was explored" and that they did not think that they had "gotten enough information to really say yes Camp Allen was evaluated."  Id. at 26, 28.

_____

[2] Plaintiffs' supplemental analysis clarified that the property previously referred to as "97 Back River Road" is properly known as 94 Back River Road.  Doc. no. 13-7 at 38.

10

The ZBA also questioned whether plaintiffs made sufficient efforts to contact the owner of 25 Strawberry Hill Road.

Given these reservations, the ZBA unanimously voted to deny plaintiffs' request for a special exception. The ZBA subsequently issued a written decision explaining that its denial was based on two primary findings: (1) plaintiffs offered insufficient evidence "that a good faith effort ha[d] been made to evaluate alternative sites that would present a lesser impact"; and (2) plaintiffs did not provide for adequate aesthetic mitigation of the tower.[3] Doc. no. 13-10 at 1-2.

Plaintiffs moved for a rehearing. In support, they offered additional evidence of their efforts to evaluate alternative sites, including the affidavit of Amber Debole, who conducted the initial evaluation and contact of the Camp Allen property. They also offered evidence of their post-decision efforts "to solicit interest from Camp Allen and several other property owners in the vicinity." Doc. no. 13-11 at 8. More specifically, the motion for rehearing listed seven alternative sites plaintiffs contacted after the ZBA's decision and noted

---

[3] During the April 18 hearing, the ZBA questioned plaintiffs about how the design of the wireless tower was the least intrusive with respect to visual impact and why they were not using a "stealth" design. Plaintiffs explained that a stealth design was not feasible because modern antennas require air flow and "putting it in an enclosed structure would [cause] limitation of" the antenna's function. Doc. no. 13-8 at 8.

11

that five of the seven—including Camp Allen—expressed interest in "explor[ing] the possibility of [locating] a wireless facility" at those sites.  Id. at 8-9.  Plaintiffs represented that they "intend[ed] to actively explore these properties with the owners between now and the ZBA's next schedule[d] meeting on June 20, as a measure of good faith and commitment to exhausting potential sites identified by the ZBA."  Id. at 9.

Plaintiffs subsequently filed an amended motion for rehearing updating their post-decision efforts to evaluate alternative sites.  Doc. no. 13-12 at 6-14.  In this amended motion, plaintiffs represented that, as to the five interested property owners, they had met with the owners, walked their properties, and conducted initial feasibility analyses for tower location.  Id. at 12.  However, all five property owners ultimately concluded that they were not interested in having a facility located on their respective properties and each executed a written response to that effect.

At its June 20 hearing, the ZBA denied plaintiffs' request for rehearing, reasoning that no "new facts had been presented in the rehearing request that could not have been reasonably discovered during the initial proceedings and prior to" the ZBA's original decision on the application.  Doc. nos. 13-14 at 6, 13-15 at 1.  During the hearing, some ZBA members expressed concerns that allowing plaintiffs to submit information that was

previously available to them, and which could have been submitted with the original application, could allow hearings to "go on forever and ever."  Doc. no. 13-14 at 2.

The following month, plaintiffs filed this suit alleging that the ZBA's denial of their special exception application effectively prohibits them from providing personal wireless services to the gap area in violation of the Federal Telecommunications Act.  Doc. no. 1 at ¶¶ 53-54.

## DISCUSSION

The parties move separately for summary judgment on plaintiffs' only claim of effective prohibition.  Both parties assert in their respective motions that there are no genuine issues of material fact and that plaintiffs' claim should be resolved on summary judgment.  Doc. nos. 13-1 at 10, 14-1 at 12.

The Federal Telecommunications Act ("TCA") "reflects Congress's intent to expand wireless services and increase competition among providers."  Green Mountain Realty Corp. v. Leonard, 688 F.3d 40, 48 (1st Cir. 2012) (hereinafter "Green Mountain I") (quotation and ellipsis omitted).  It also represents "a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers."  Town of Amherst, N.H. v. Omnipoint Commc'ns Enters.,

Inc., 173 F.3d 9, 13 (1st Cir. 1999). To that end, under the TCA, local governments retain control over "decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). However, that control is subject to five statutory limitations that set an "outer limit" on local authority. Town of Amherst, 173 F.3d at 15; see also Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 19 (1st Cir. 2002).

The relevant statutory limit here is the requirement that local regulation of wireless service facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). If a regulatory decision of a local authority effectively prohibits the provision of wireless services in violation of 47 U.S.C. § 332(c)(7)(b)(i)(II), the local law or decision is preempted in order to effectuate the TCA's national policy goals. See Second Generation Props., L.P. v. Town of Pelham, 313 F.3d 620, 627 (1st Cir. 2002).

To prove an "effective prohibition" claim, the provider must demonstrate that: (1) a significant gap in coverage exists; and (2) the proposed plan, which the local authority has rejected, is the "only feasible plan." Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 48, 50 (1st Cir. 2009). Both of these determinations are "fact-bound." Id. at 48.

Consequently, each effective prohibition claim turns on the facts in the record, not on "bright-line legal standards."  Id.

This court, not the local authority, must decide whether the local authority's decision constitutes an effective prohibition.  Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (hereinafter "Green Mountain II").  Indeed, nothing in the TCA expressly authorizes local authorities to determine whether their decisions amount to an "effective prohibition."  Second Generation, 313 F.3d at 630.  Consequently, when a local authority "purports to pass upon the issue, the federal courts afford it 'no special deference.'"  Green Mountain II, 750 F.3d at 39 (quotation and brackets omitted).  Additionally, this court is not limited to the evidence provided to the local authority, but, rather, is "free to consider additional evidence."  Second Generation, 313 F.3d at 629.

I.  Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that the ZBA's denial of their special exception application effectively prohibited provision of wireless services in the gap area in violation of the TCA because the record demonstrates that there is a significant gap in services and that they thoroughly investigated other viable options before concluding that there was no other feasible plan.

Doc. no. 14-1 at 12-13.  Defendants counter that plaintiffs are
not entitled to summary judgment on this claim because they did
not present sufficient evidence to the ZBA demonstrating that
they had fully evaluated alternatives.  Doc. no. 15-1 at 3-4.
In evaluating plaintiffs' motion for summary judgment, the court
construes the evidence in the light most favorable to
defendants, drawing all reasonable inferences in their favor.
See ATC Realty, 303 F.3d at 94.

A. Significant Gap in Services

Plaintiffs first argue that they have established the
existence of a significant gap in services based upon the
evidence submitted to the ZBA and the expert report of Richard
Conroy submitted with their pending motion.  Doc. no. 14-1 at
13-14.  Defendants do not appear to contest that plaintiffs have
established that a significant gap in services exists in the
identified gap area of Bedford.  See generally doc. nos. 13-1 at
10-14, 15-1, 17-1.  However, because it is plaintiffs' burden,
as the provider, to demonstrate both elements of an effective
prohibition claim, the court will address the evidence regarding
the existence of a significant gap in services.  See City of
Cranston, 586 F.3d at 48 ("The carrier has the burden to show an
effective prohibition has occurred.").

The "significant gap" analysis focuses on whether a significant gap in coverage exists within an individual provider's network, not whether any provider offers services to the specified geographical area. Id. at 49. In assessing whether a gap in coverage is "significant," the court may consider, among other things, the physical size of the gap, the characteristics of the area in which there is a gap, the number of users the gap affects, and data about inadequate service in the gap area. Id.

Here, plaintiffs have provided sufficient undisputed evidence to establish the existence of a significant gap in southern Bedford. Plaintiffs submitted a Radio Frequency Analysis with their application before the ZBA, prepared by Radio Frequency Engineer, Ryan Monte de Ramos. Doc. no. 14-13 at 20-26. This analysis identified a significant gap in T-Mobile's services in the areas along Back River Road, County Road, and part of Wallace Road in Bedford. The analysis included a map depicting some areas in Bedford that are currently without any T-Mobile services, as well as larger areas where no reliable in-building services exist.

After reviewing plaintiffs' analysis, the ZBA commissioned its own independent consultant to assess the purported gap in services. The ZBA's consultant also reached the conclusion that "there exist gaps in coverage in [the identified] areas of [the]

17

Town for in-building coverage."  Doc. no. 14-16 at 2, 3.  This
evidence cumulatively demonstrates a lack of in-building
coverage in the gap area.  See PI Telecom Infrastructure, LLC v.
City of Jacksonville, FL, 104 F. Supp. 3d 1321, 1348 (M.D. Fla.
2015) (collecting federal authority in support of proposition
"that a lack of in-building coverage can constitute a gap in
service, particularly in a primarily residential area where
calls may most likely be made indoors"); see also Indus. Tower
and Wireless, LLC v. Haddad, 109 F. Supp. 3d 284, 301 (D. Mass.
2015) (finding no genuine dispute of material fact that a
"significant gap" in services existed where provider relied upon
studies showing lack of service and administrative board's
independent consultant agreed that gap existed).

        Plaintiffs have also submitted, in support of their motion
for summary judgment, Richard Conroy's expert report.[4]  See doc.
no. 14-21.  The report and attached propagation maps demonstrate
that there is a 6.7 square mile gap in T-Mobile's reliable in-
building services in Bedford near Back River Road and County
Road.  Further, the report establishes that the gap area is home

_____

        [4] Although defendants do not specifically contest the
court's consideration of this expert report, they argue
generally that the court should consider only the evidence that
was before the ZBA and not consider additional evidence produced
after the ZBA's denial.  Doc. no. 15-1 at 5-6.  As explained
below in the discussion of the only feasible plan element, the
court disagrees that its view of the evidence is so limited.

to approximately 4,000 residents and three schools.  This
evidence supports a finding that the identified gap is
"significant."   See Branch Towers, LLC v. City of Knoxville, No.
3:15-CV-00487, 2016 WL 3747600, at *6 (E.D. Tenn. July 11, 2016)
(holding provider met burden on summary judgment of
demonstrating "significant gap" in services where the gap
consisted of 1.5 square mile area that encompassed residential
streets, churches, a school, and several heavily traveled
roads); AT & T Mobility Servs., LLC v. Vill. of Corrales, 127 F.
Supp. 3d 1169, 1174 (D.N.M. 2015)(finding sufficient evidence of
"significant gap" on summary judgment where the gap was
approximately two miles across and much of it included a
residential zone without reliable in-home coverage) aff'd, 642
F. App'x 886 (10th Cir. 2016).  Based on the evidence plaintiffs
submitted to the ZBA and to this court, and the lack of any
contradictory evidence provided by defendants, the court
concludes that plaintiffs have met their burden of proof to show
that it cannot genuinely be disputed that a "significant gap" in
services exists in Bedford.

    B. Only Feasible Plan
    Plaintiffs next argue that they have thoroughly
investigated all other viable alternative technologies and sites
and that constructing a new monopole wireless telecommunications

facility at the subject property is, by process of elimination, the only feasible plan.  Doc. 14-1 at 14-15.  In support of this argument, plaintiffs rely upon not only the evidence they presented to the ZBA prior to its denial, but also "post-decision" evidence, including evidence submitted with their amended motion for rehearing.  Id. at 5-9, 14-17.  Plaintiffs assert that First Circuit precedent supports this court's consideration of this additional, post-decision evidence.

Defendants respond that, based upon the evidence presented to the ZBA prior to its denial of the special exception, plaintiffs cannot meet their burden of showing that the proposed plan is the only feasible option.  Doc. no. 15-1 at 2-4.  They argue that, although it is within this court's discretion to consider additional, post-decision evidence on an effective prohibition claim, the court should not do so where plaintiffs' "application was materially deficient and where the ZBA notified the [p]laintiffs of these deficiencies and allowed the [p]laintiffs to supplement their application to no avail."  Doc. no. 17-1 at 2.  Thus, as an initial matter, this court must determine whether it should consider additional, post-decision evidence in analyzing whether plaintiffs have satisfied the "only feasible plan" element of their effective prohibition claim.

As noted above, whether the ZBA has "effectively prohibited the provision of wireless services is determined de novo by the district court." Second Generation, 313 F.3d at 629; see also Nat'l Tower, 297 F.3d at 22 (observing that effective prohibition claim "present[s] questions that a federal district court determines in the first instance without any deference to the board"). In making that determination, the court is "free to consider additional evidence." Second Generation, 313 F.3d at 629 (affirming district court's grant of summary judgment to town, where court considered both the record developed before the local board as well as "other evidence submitted by the parties in support of their motions").[5]

The court is not without sympathy for defendants' position. From the ZBA's perspective, plaintiffs' presentation of their application to the ZBA fell short of the mark. After the ZBA notified plaintiffs of the material deficiencies in their application, plaintiffs failed to supplement their application in a timely and effective manner. The ZBA's refusal to consider plaintiffs' supplementary, post-decision evidence on rehearing

_____

[5] This standard of review stands in contrast to a district court's review of a "substantial evidence" claim under the TCA. When a plaintiff claims that the board's decision is not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii), judicial review is "confined to the administrative record" and the court must give deference to the board's decision. Nat'l Tower, 297 F.3d at 22-23.

was based upon application of the ZBA's procedural rules.  It
does not appear unreasonable for the ZBA to deny applications
for rehearing for what it deems noncompliance with those rules.

The role of this court, however, is not to decide whether
the actions of the ZBA were reasonable.  Rather, this court's
role is limited to determining whether the ZBA's denial has "the
effect of prohibiting the provision of personal wireless
services."  47 U.S.C. § 332(c)(7)(B)(i)(II); see also Green
Mountain I, 688 F.3d at 59 n.14 (explaining that focus of
effective prohibition inquiry is whether the local decision,
even if supported by the evidence, "has an impermissible
effect").

In so determining, the court must evaluate whether the
plaintiffs' proposal is the "only feasible plan."  City of
Cranston, 586 F.3d at 52.  Plaintiffs bear the burden of proving
that they "'investigated thoroughly the possibility of other
viable alternatives' before concluding no other feasible plan
was available."  Id. (quotation omitted); see also Town of
Amherst, 173 F.3d at 14 (describing provider's burden as showing
"from language or circumstances not just that this application
has been rejected but that further reasonable efforts are so
likely to be fruitless that it is a waste of time even to try").
Relevant facts a court may consider in assessing whether a
provider has carried this burden include the technical

feasibility of the proposed and alternative plans, the overall cost of alternatives to the provider, the technological efficiency of alternatives, and "whether the town could prefer other solutions on aesthetic grounds." City of Cranston, 586 F.3d at 52. Also relevant is the availability of alternative sites, i.e. whether owners are willing to sell or lease the land. See Indus. Commc'ns & Elecs., Inc. v. O'Rourke, 582 F. Supp. 2d 103, 109 (D. Mass. 2008). "Ultimately, the question is a practical inquiry into feasible, available alternatives." City of Cranston, 586 F.3d at 52-53.

Plaintiffs' post-decision evidence goes to the heart of the "only feasible plan" inquiry—it pertains to whether there are alternative feasible sites for the tower. The existence of other feasible sites would support a finding that there is no effective prohibition; on the other hand, the fact that no other feasible sites exist would support the opposite conclusion. Because plaintiffs' post-decision evidence is relevant to the court's de novo determination of whether there has been an effective prohibition of the provision of wireless services, the court finds it appropriate to consider that evidence.

Turning to the merits of the "only feasible plan" inquiry, plaintiffs argue that the evidence demonstrates that they thoroughly investigated alternative sites, as well as alternative technologies and designs. Defendants counter that

plaintiffs cannot carry their burden of showing that their proposal is the only feasible plan for two primary reasons: first, their investigation of alternative sites was inadequate in several respects, and, second, they have not shown that the ZBA's proposal of a "stealth design" is infeasible. Although the court agrees that plaintiffs' application may well have been deficient in these respects prior to the ZBA's initial denial, plaintiffs' post-decision evidence demonstrates that constructing a new monopole tower at the subject property is the only feasible plan. The court addresses each of defendants' arguments below.

1. Adequacy of plaintiffs' investigation of alternative sites

Defendants first argue that plaintiffs' investigation of alternative sites was inadequate in three primary respects: (1) failing to detail efforts to contact property owners at the 25 Strawberry Hill Road and 56 Camp Allen Road properties; (2) failing to consider "all potentially less sensitive sites in an area with large open fields, as compared to the 1.3 acre subject property" located in a more densely populated residential area; and (3) failing to make Amber Debole, who conducted the initial site evaluations, available at any ZBA hearing. Doc. no. 17-1 at 3; see also doc. nos. 15-1 at 3, 13-1 at 12.

i. <u>Efforts to contact owners of 25 Strawberry Hill
Road and 56 Camp Allen Road</u>

Plaintiffs have submitted sufficient evidence that they
exhausted efforts to contact property owners at 25 Strawberry
Hill Road and 56 Camp Allen Road.  As to 25 Strawberry Hill
Road, plaintiffs' initial alternative site analysis explained
that, although this location was radio frequency approved, the
property owner did not respond to written proposals.  Doc. no.
13-3 at 58.  In their supplemental alternative site analysis
submitted prior to the April hearing, plaintiffs again
represented that this property, along with several other parcels
along either side of Strawberry Hill Road owned by the same
person, was ruled out because the property owner did not respond
to written proposals.  Doc. no. 14-16 at 21.  Finally, after the
ZBA's denial, plaintiffs sent a letter of inquiry via certified
mail to the owners of 25 Strawberry Hill Road explaining their
interest in executing an option to lease a portion of their 37-
acre property for location of a wireless telecommunications
tower.  The land owners completed the enclosed "response form,"
indicating that they had no interest in the proposal.  Doc. no.
14-20 at 9-12.  This written response confirmed plaintiffs'
prior representations that this site is not feasible due to
unavailability.

As to 56 Camp Allen Road, the record also demonstrates that plaintiffs exhausted efforts to contact the property owner.  In plaintiffs' original application, the Camp Allen Road property was considered based only on the possibility of adding to existing utility stanchions.  Plaintiffs rejected that alternative at that time because the stanchions were not a sufficient height, and because collocating antennas on the stanchions would cause access and maintenance issues.  Doc. no. 13-3 at 58.  In plaintiffs' supplemental analysis provided prior to the April hearing, they clarified that they explored two alternative options at the 56 Camp Allen Road property: adding to the stanchions and building a new tower on other land in the same parcel.  Doc. no. 14-16 at 20.  The supplemental analysis reiterated the reasons for disqualifying the stanchions and explained that building a new tower at this site was also not feasible both because of its proximity to existing T-Mobile facilities and its owner's failure to respond to their inquiries.  Id.  Regarding the possibility of siting a new tower, plaintiffs' original site acquisition specialist, Amber Debole, physically visited the Camp Allen property seven or eight times between February and April 2016 but saw only maintenance personnel.  Doc. no. 14-17 at 30-31.  She eventually contacted a receptionist who said she would inform the Camp's board of directors about the inquiry.  Debole never heard back

from the Camp; she followed up again by telephone, again with no response.  Id. at 31.

   After the ZBA's denial of plaintiffs' application, plaintiffs submitted, by certified mail, written inquiries about the 56 Camp Allen Road property to Camp Allen Inc.  Initially, the property owner expressed interest in siting the facility on its property.  Doc. no. 14-18 at 3.  Plaintiffs then visited the property and discussed the feasibility of the site with the owner.  Following these discussions, the property owner responded in writing that it was no longer interested in leasing the land to plaintiffs.  Id. at 4, 19.  This evidence shows plaintiffs' thorough efforts to contact and lease land from the property owners of 25 Strawberry Hill Road and 56 Camp Allen Road.

### ii.  Consideration of "less sensitive" sites

   Defendants next argue that plaintiffs cannot carry their burden because they did not investigate larger, more open properties in the search ring.  In so arguing, defendants rely upon plaintiffs' efforts prior to the ZBA's denial and do not address plaintiffs' post-decision evidence.  Taking that post-decision evidence into account, defendants have not identified any specific "less sensitive" properties that plaintiffs overlooked.  As explained below, viewing all of the evidence

properly before the court, plaintiffs have demonstrated that they investigated and ruled out other larger, more open properties in the search ring.

In addition to the three alternatives discussed above (25 Strawberry Hill Road, new tower at 56 Camp Allen Road, and adding to existing stanchions at 56 Camp Allen Road), plaintiffs evaluated and ruled out eight other properties in the search ring, including several larger, less residential properties. Three of those properties—owned by Girl Scouts of the Green and White Mountains, Global Premier Soccer League, and Manchester Boys and Girls Club respectively—are located on Camp Allen Road near 56 Camp Allen Road, and are of a similar character to that property, containing large open fields and/or campgrounds. All three properties are zoned Recreational-Agricultural, rather than Residential-Agricultural. Further, these three properties are all much larger than the subject property's 1.3 acres, ranging in size from 7 to 19 acres.

Plaintiffs submitted written inquiries via certified mail to these three properties following the ZBA's denial of its application.[6] All three property owners initially responded with interest. However, after further investigation and discussion,

_____

[6] It is not clear from the record why plaintiffs did not include these properties in their initial alternative site analysis.

all three property owners documented in writing that they did
not wish to go forward.  Doc. nos. 14-19 at 6, 25, 14-20 at 6.
Plaintiffs' efforts to lease these properties demonstrate that
they attempted to find a larger parcel in a less residential
area, but found no interested property owners.  See O'Rourke,
582 F. Supp. 2d at 110 (determining alternative site unavailable
because owners were not interested in selling the land).

    Plaintiffs also investigated and attempted to contact five
other property owners in the search ring.  Two properties—148
Back River Road and Pennichuck Water Works—were sent written
inquiries by certified mail and either failed to respond or
indicated in writing that they were not interested in leasing
their land to plaintiffs.[7]  Doc. no. 14-17 at 35-36, 41.  22
Tirrell Road was also eliminated due to property owner
disinterest following an in-person inquiry.  Id. at 31.  The
final two properties were disqualified due to zoning and
environmental concerns: 94 Back River Road is located too close
to conservation parcels and 80 Forest Drive does not have
sufficient space in the lot to construct a tower due to setback
requirements.  Doc. no. 14-16 at 21-22; see O'Rourke, 582 F.
Supp. 2d at 110 (describing alternative sites as infeasible

---

    [7] Again, the court notes that it is unclear from the record
why plaintiffs did not investigate or contact these properties
until after the ZBA's denial.

where they contained wetlands, lacked roadway access, and/or had insufficient space in which to construct tower).  The record demonstrates that plaintiffs identified and thoroughly investigated the viable properties in the search ring, leaving the subject property as the only feasible location.  Compare New Cingular Wireless PCS, LLC v. City of Manchester, NH, No. 11-cv-334-SM, 2014 WL 799327, at *4 (D.N.H. Feb. 28, 2014) (finding provider demonstrated alternative sites were not feasible due, in part, to unwillingness of property owners to rent), and Sprint Spectrum, L.P. v. Town of Ogunquit, 175 F. Supp. 2d 77, 90-92 (D. Me. 2001) (finding plaintiffs carried burden of showing effective prohibition where they had investigated ten alternative sites that were determined infeasible by their experts and town's proposed alternatives were not technically feasible), with Town of Amherst, 173 F.3d at 14-15 (finding evidence was inadequate to prove that proposed siting plan was only feasible option where record demonstrated that a system of lower towers could be used).

### iii. Absence of Amber Debole at ZBA hearings

Defendants next argue that plaintiffs cannot carry their burden because they did not make Debole, the original site acquisition specialist, available at the ZBA hearings.  Doc. 17-1 at 3.  The court is not persuaded.  Although it may have been

preferable for plaintiffs to make Debole available for questioning at the hearings, defendants have cited no authority demonstrating that her absence establishes that plaintiffs did not engage in a thorough investigation. As a practical matter, Debole was no longer employed by plaintiffs at the time of the hearings, and plaintiffs ultimately submitted an affidavit from her detailing her work on the project. See doc. no. 14-17 at 5-6. Additionally, plaintiffs' subsequent site acquisition specialist, Michael Almada, was present and available to answer questions at the March and April hearings.

### 2. Feasibility of ZBA's proposed "stealth design"

Defendants rely on more than just plaintiffs' alleged deficient investigation of alternative sites to argue that plaintiffs' have not shown that their proposal is the only feasible plan. Defendants also argue that plaintiffs have not established that the ZBA's proposed "stealth design" is infeasible. Defendants assert that—at most—plaintiffs have established that the ZBA's proposed design is undesirable. Doc. nos. 13-1 at 14, 15-1 at 4.

It is true that "[a] carrier cannot win an effective-prohibition claim merely because local authorities have rejected the carrier's preferred solution." City of Cranston, 586 F.3d at 52. Further, a local zoning authority may favor other

alternatives on "aesthetic grounds." Id. However, those
alternatives must still be feasible. See O'Rourke, 582 F. Supp.
2d at 109 ("In order for a site to be an alternative sufficient
to forestall a claim of effective prohibition, it needs to be
available and technically feasible.").

Here, the evidence demonstrates that the stealth design is
not technically feasible. In response to the ZBA's questioning
about using a stealth design, plaintiffs' radio frequency
engineer explained that modern antennas require air flow. He
further explained that putting the antennae in an enclosed
structure for a stealth design would limit their functionality.
Specifically, he testified that, when air flow is restricted,
"the antenna will not function . . . it will not provide the
service, it will cause maintenance issues more often, and the
antenna might break down." Doc. no. 13-8 at 8. Additionally,
plaintiffs' expert report supports the same conclusion. See
doc. no. 14-21 at 15 (explaining that current antenna technology
requires ventilation and precludes the use of enclosed tower
designs). This undisputed evidence demonstrates that, though a
stealth design may be preferred by the ZBA, it is not a
technically feasible alternative. Cf. USCOC of NH RSA No. 2,
Inc. v. Town of Bow, 493 F. Supp. 2d 199, 214-15 (D.N.H. 2007)
(concluding provider had not met its burden of demonstrating
that proposed site was only feasible option where decisions to

reject alternatives were not based on technical infeasibility, but "a host of factors relevant to the business judgment about where best to locate a facility").

Plaintiffs' investigations into alternative sites, technologies, and designs demonstrate that it eliminated all other feasible plans, leaving only construction of a new 130-foot monopole tower at 25 Tirrell Road. Although a local zoning board does not bear the burden of proving that another suitable alternative plan in fact exists, this principle does not "suspend the usual rules governing summary judgment." Nat'l Tower v. Frey, 164 F. Supp. 2d 185, 189-90 (D. Mass. 2001). Once the provider makes a showing that no alternative plan exists, the board must either demonstrate that the evidence offered is factually insufficient, or "come forward with evidence of its own demonstrating a trialworthy dispute." Id.; see also City of Cranston, 586 F.3d at 53 (concluding district court did not err in finding proposed plan was only feasible option where City's proposed alternative sites were not feasible and City's expert was not credible).

As explained above, the court is convinced that the record is sufficient to show that plaintiffs thoroughly investigated all viable alternative plans. Defendants have not come forward with evidence to the contrary that would raise a trialworthy issue. Most notably, defendants have not identified any

specific alternative locations for the tower that plaintiffs did
not explore either before or after the ZBA's denial.  Rather,
defendants hold fast to the argument that—based on the record
before the ZBA—plaintiffs cannot meet their burden.  Defendants
do not advance an argument in the alternative urging the court
to reject plaintiffs' claim based on the post-decision evidence.
Accordingly, the court concludes that plaintiffs have met their
burden of showing that their proposal is the only feasible plan
that would remedy the significant gap in coverage in Bedford and
that further reasonable efforts to identify alternatives are
likely to be fruitless such that it would be a waste of time to
try.  See Town of Amherst, 173 F.3d at 14.

    In sum, in light of the undisputed evidence in the record,
the court concludes that plaintiffs have satisfied both prongs
of their effective prohibition claim by providing evidence of a
"significant gap" in services and demonstrating that they
evaluated the other available alternatives and those
alternatives are "not feasible to serve [their] customers." Sw.
Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 63 (1st Cir. 2001),
abrogated on other grounds by T-Mobile S., LLC v. City of
Roswell, Ga., 135 S. Ct. 808 (2015).  They are therefore
entitled to summary judgment on that claim.

II.  Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on plaintiffs' effective prohibition claim because plaintiffs cannot prove that the subject property is the only feasible site and that the ZBA's proposed "stealth design" is infeasible.  See doc. no. 13-1 at 10-14.  Defendants raise essentially the same arguments in support of their motion for summary judgment as they do in objection to plaintiffs' cross-motion.  Because the court has already substantially addressed and rejected those arguments, it will not do so separately here.  In short, because the plaintiffs are entitled to summary judgment, defendants are not entitled to summary judgment.  See Town of Amherst, 74 F. Supp. 2d at 127.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment (doc. no. 14) is granted, and defendants' motion for summary judgment (doc. no. 13) is denied.  While the TCA does not specify a remedy for a violation, where the requisite showing has been made, "injunctive relief is the preferred remedy, given the Act's stated objective of expediting judicial review."  Frey, 164 F. Supp. 2d at 190; see also 47 U.S.C. § 332(c)(7)(B)(v).  This injunctive relief typically takes the form of an order requiring the local board to issue the

wrongfully withheld permit.  Nat'l Tower, 297 F.3d at 21-22;

Brehmer v. Planning Bd. of Town of Wellfleet, 238 F.3d 117, 120

(1st Cir. 2001).  Therefore, the court orders the ZBA to issue,

within forty-five (45) days of the date of this order, the

requested special exception necessary for plaintiffs to

construct the proposed 130-foot "monopole" wireless

telecommunications facility at the subject property.

        SO ORDERED.

                              _____
                              Landya McCafferty
                              United States District Judge


November 28, 2018

cc:  Counsel of Record